J-S09001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: J.G.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.B.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1403 WDA 2022 |

Appeal from the Order Entered October 31, 2022
In the Court of Common Pleas of Washington County Orphans' Court at
No(s):  C-63-OC-2022-186

| | | |
|---|---|---|
| IN RE: ADOPTION OF: D.J.D., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: E.D., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1404 WDA 2022 |

Appeal from the Order Entered October 31, 2022
In the Court of Common Pleas of Washington County Orphans' Court at
No(s):  63-22-0185

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED: MAY 23, 2023**

E.D. ("Mother") appeals from the orders entered on October 31, 2022,
that granted the petitions filed by the Washington County Children and Youth
Social Services Agency ("Agency") to involuntarily terminate Mother's parental
rights to her minor children, D.D. (born in November of 2011) and J.D. (born

in January of 2013) (collectively "Children").[1]  Following our review, we affirm

the orders on appeal.[2]

The trial court provided an extensive summary of the factual findings in

this case relying on the Agency's Petition for Involuntary Termination of

Parental Rights.  Initially, the court stated:

> "The Agency has had a history with the family dating
> back to 2014.  The family's most recent involvement
> began in July 2020, due to ongoing parental substance
> use issues.  Since April 2020, Mother has overdosed
> on three different occasions (April 2020, September
> 2020, and December 2020).  The Agency sought and
> received an emergency shelter order for the
> placement of the [C]hild(ren) on December 3, 2020,
> after Mother overdosed for a third time and had to be
> revived with Narcan.  The minor [C]hild(ren) [have
> been] out of the care of Mother since that time.  The
> minor [C]hild was adjudicated dependent on
> December 11, 2020."  Agency Petition at Paragraph
> 8.[2]
>
> [2] Identical as to both [C]hildren.

> By way of further detail, the Minor Children initially came
> into the care [of the Agency] after a shelter petition on December
> 3, 2020.  The petition alleged that the Minor Children were without
> proper care or control, citing a history of substance abuse issues
> with Mother and concerns of domestic violence.  In support of the
> petition, the Agency referenced:

---

[1] The parental rights of A.G. (Father) were also terminated on the same date; however, Father did not file appeals.

[2] This Court consolidated Mother's two appeals *sua sponte* by order dated January 25, 2023, in that they involve related parties and issues.  **See** Pa.R.A.P. 513.

• [Mother's] overdose on April 17, 2020, following which she checked into rehab, and voluntarily checked out after three (3) days;
• A May 5, 2020 referral alleging heroin in the home of [Mother]; An alleged overdose by [Mother] on September 19, 2020, with additional allegations of possible intimate partner harassment and an Agency safety plan implemented in the same time frame;
• Contact from Southwestern Pennsylvania Human Services, hereinafter "SPHS," in November of 2020, alleging [Mother's] failure to comply with drug and alcohol treatment[;]
• Return of Minor Children to [Mother] on November 29, 2020, after safety plan caregiver entered the hospital with a COVID 19 diagnosis[;]
• A December 3, 2020 report that [Mother] had overdosed [and] required Narcan for revival. Minor [C]hildren present during overdose[;]
• Additional allegations on December 3, 2020, that [Father] was present during the overdose incident and was also using illicit substances[;]
• Further concerns involving [Mother's] falsified urine screens which later produced positive results for cocaine and marijuana with mouth swab re-testing.

Trial Court Opinion ("TCO"), 10/31/2022, at 2-3.

The trial court further provided details relating to the shelter care order issued on December 4, 2020, which explained Mother's overdose three days after the Children were returned to her care, followed by the Children's placement with family cousins. The court also discussed the dependency proceedings, which allowed visitation twice weekly with both parents. The trial court heard testimony from Mother's probation officer and from the school counselor, who reported on the Children's extensive truancy. The evidence from the various permanency review hearings was also included by the court, finding no progress having been made by Mother. Specifically, the court found

that Mother had not engaged in mental health and drug and alcohol treatment, was not compliant with random testing, was removed from visitation because she failed to appear and/or confirm the visits, and that she had cancelled five visits. Mother did participate in an individual psychological evaluation with Dr. Neil Rosenblum, who is an expert in forensic psychology. The court also included details from the various permanency review hearings held during 2021. By the end of December 2021, the Children had been in placement for twelve months.

Then, on February 1, 2022, the Agency filed petitions to involuntarily terminate both Mother's and Father's parental rights with regard to both Children. Notably, the last permanency review hearing was held on March 4, 2022, prior to the termination hearing. The court noted its concerns as to Mother, stating:

> [Mother] was noted to have no progress as a result of: not engaging in mental health and/or drug and alcohol treatment; non-compliance with random testing[;] removal from visitation list due to failure to appear and/or confirming a visit and cancelling five (5) visits. [Mother] was also incarcerated on outstanding bench warrants at the time of the hearing. [Mother] did participate in an individual psychological evaluation with Dr. Rosenblum.

TCO at 7-8.

In its opinion, the court also discussed its findings relating to the termination hearing. Initially, it listed the sixteen exhibits submitted by the Agency and the three exhibits submitted by Mother. The court then discussed the testimony received from various witnesses, stating:

Testimony at the hearing was received from Dr. Neil Rosenblum, expert in forensic psychology and Nicole Snyder, Agency caseworker. Dr. Rosenblum testified regarding his evaluations and recommendations with regard to the parties and his current impressions regarding the termination of parental rights. [Dr.] Rosenblum testified that he first evaluated Mother in January of 2022. [Dr.] Rosenblum noted that Mother was fully cooperative, however, unusually casual with a lack of concern regarding the family difficulty. Through his observations, Mother would underplay or fail to recognize the seriousness of her drug problem and exposure [of] domestic violence to her [C]hildren. [Dr.] Rosenblum emphasized this point by referencing Mother's overdose in the home at the onset of the case and a history of drug use by Mother dating back many years.

Dr. Rosenblum recommended in-patient drug and alcohol treatment with specific step downs to a halfway house and intensive outpatient treatment. Additionally, [Dr.] Rosenblum discussed Mother's untreated mental health concerns and homelessness at the time of his evaluation.

. . .

In discussion of his interactional evaluation with D.D. and parents, [Dr.] Rosenblum noted that Father talked about his own homelessness while D.D. was present. [Dr.] Rosenblum found Mother "more effective" and said Mother displayed a true affection for D.D. with positive concern for his well[-]being. Nevertheless, [Dr.] Rosenblum felt that Mother underestimated D.D.'s mental health concerns.[5]

> [5] D.D. was noted to be harmful when upset with a documented incident of "choking" J.D. and attacking her with a fork. D.D. is diagnosed with ADHD, PTS[D], Disruptive Impulsive Disorder and a rule out of Reactive Attachment Disorder.

[Dr.] Rosenblum also did an interactional evaluation between D.D. and foster parents, wherein [Dr.] Rosenblum noted structure within the home and found that the foster parents were "very invested with [D.D.]." J.D. was unavailable for evaluation on the same date[,] however, [Dr.] Rosenblum recommended trauma therapy for J.D.

[Dr.] Rosenblum testified that neither child has a meaningful attachment to Father, inasmuch as both knew Mother's paramour, as their [f]ather figure. Further, while D.D. expressed allegiance to Mother, the minor child was confident with his foster parents. [Dr.] Rosenblum testified that the bond between Mother and D.D. is more toxic than supportive, not being a healthy relationship, which has caused significant harm. …

As to J.D., [Dr.] Rosenblum noted that the child has failed in the last three (3) to four (4) foster home placements and is not currently in a pre-adoptive home. Despite such revelations, [Dr.] Rosenblum opined that termination of parental rights would be in the best interest of J.D. In a final evaluation, [Dr.] Rosenblum testified that while visitation with Mother may be beneficial, termination of parental rights is in the best interest of the [C]hildren and would not cause irreparable harm.

Caseworker Nicole Snyder testified that, as of the hearing date, the Minor Children were in care twenty-one (21) months. Snyder detailed the history of the case, as outlined in the case history and provided additional testimony regarding a negative urine test result of Mother's that was later a confirmed positive with an oral swab. Snyder also testified that Mother reported that her bones were achy from smoking too much crack.

As testified to by Snyder and supported by the record, the Agency put services in place to address concerns with substance abuse, mental health and parenting. Despite such services, Father had no compliance and/or progress during the history of the case and Mother only reached the level of minimal compliance with no progress throughout the case. In addition, both parents obtained new criminal charges during the lifetime of the case.

With regard to visitation history, Snyder testified that visitation started with visits including both parents twice weekly for two (2) hours. Concerns were raised regarding inappropriate comments and requests made by parents to the [C]hildren during visitation and[,] therefore, visitation was modified with parents engaging in visits separately. Snyder testified that parents were inconsistent with their visits. Visitation was reduced to one (1) time every other week. At that time, Father requested removal from the visitation schedule and had no further visits with the children after December 2021. According to Snyder, Mother only visited one (1) time following this reduction in schedule. Prior to

the TPR hearing, Mother's last visit with D.D. was June 17, 2022. Snyder testified that throughout the history of the case there was no movement to unsupervised visitation.

Upon direct questioning, Snyder testified that in the last six (6) months[,] Mother and Father failed to discharge their parental duties for D.D. and J.D. providing no essential care, control or subsistence. She also testified that neither parent remedied the conditions which lead [*sic*] to the original placement. Snyder further testified that there was no remedy in the last twelve (12) months, with no improvement to the conditions leading to placement.

Snyder noted that parents did provide D.D. with a remote control car for his birthday. On cross examination, Snyder also acknowledged that Mother informed her that she was involved with the Center for Excellence. Further, Snyder acknowledged that prior to the hearing, Mother made the Caseworker aware that she has her own place and is working in home healthcare.

Snyder testified that she believed it to be in the best interest for both [C]hildren for the [c]ourt to grant termination of parental rights. The Caseworker testified that D.D. need[s] normalcy and J.D. needs consistency. D.D. indicates that he wants to be adopted and J.D. wants to be with her Mother, but acknowledges that it is best for her to be adopted.

Snyder testified that she believes that the [C]hildren will suffer no irreparable harm by a termination of parental rights.

No testimony or evidence was presented by [Mother] or [Father].

TCO at 11-14.

On October 31, 2022, the trial court issued its termination of parental rights orders, granting the Agency's petitions. From those termination orders, Mother filed timely appeals. In her brief, Mother set out the following issue for our review:

Whether the [t]rial [c]ourt abused its discretion by finding that sufficient evidence existed to terminate the [M]other's parental rights pursuant to 23 Pa.C.S. [§] 2511(b).

Mother's brief at 4.

In addressing Mother's issue, we are guided by the following: Termination of parental rights is governed by Section 2511 of the Adoption Act, which requires a bifurcated analysis.

> Our case law has made clear that under Section 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citing 23 Pa.C.S. § 2511, other citations omitted). The burden is upon the petitioner to prove by clear and convincing evidence that the asserted grounds for seeking the termination of parental rights are valid. *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). However, we need only agree with the trial court as to any one subsection of Section 2511(a), as well as Section 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004).

With regard to Section 2511(b), we direct our analysis to the facts relating to that section. This Court has explained that:

Subsection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court stated, "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." In addition, we instructed that the trial court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. *Id.* However, in cases where there is no evidence of a bond between a parent and child, it is reasonable to infer that no bond exists. *In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008). Accordingly, the extent of the bond-effect analysis necessarily depends on the circumstances of the particular case. *Id.* at 763.

*In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

Here, the trial court discussed the facts of this case relative to subsection (a)(1), (2), (5) and (8), which we need not discuss here because Mother raises no issues relating to those subsections. As for subsection (b), the court found no bond between Father and the Children, based mostly on the testimony of Dr. Rosenblum. As for Mother, the court stated:

With respect to D.D. and Mother, [Dr.] Rosenblum characterized the bond as "more toxic than supportive." Although [Dr.] Rosenblum felt that [Mother] displayed a "true affection" for D.D. with positive concern for his wellbeing, he still concluded that termination of parental rights with a goal of adoption was in the best interest of D.D.

[Dr.] Rosenblum felt that there was some uncertainty with J.D., specifically considering the number of failed placements that she had endured. Nevertheless, [Dr.] Rosenblum made no recommendation toward imminent reunification, increased visitation, or delayed permanency for J.D.

Finally, Caseworker Snyder testified that she believed it to be in the best interest for both [C]hildren for the [c]ourt to grant termination of parental rights and the [c]ourt concurs in this

- 9 -

opinion.

TCO at 24-25.

Mother's argument regarding subsection 2511(b) centers on her position that severing the mother/child bond as to both Children was not in their best interests. Mother also contends that when substance abuse and mental health issues are untreated or mistreated, the courts have other options, such as permanent legal custodianship, which often are infrequently used. Mother also asserts that treatment of substance abuse and mental health may cause those suffering from those problems to delay treatment or they do not immediately succeed in treatment. Therefore, by not allowing for more time before termination of parental rights is ordered, a parent who is struggling to overcome these difficulties but eventually succeeds has already lost her parental rights through termination. Specifically, Mother asserts that termination is unnecessary in the instant case because "[M]other's relatives have one child, and another child has neither a prospective adoptive home nor a permanent home at all." Mother's brief at 11.

We must conclude, however, that the trial court's decision is supported by the record. This is evident from the court's extensive review and discussion in its opinion about the testimony provided at the termination hearing. Accordingly, the court did not abuse its discretion in determining that terminating Mother's parental rights would best serve Children's developmental, physical, and emotional needs and welfare. Therefore, we

- 10 -

affirm the trial court's orders terminating Mother's parental rights to the Children.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/23/2023